## QUIMBY *vs.* WHITNEY & ALS.

Where *B.* and *W.* lent their names each to the other, as indorsers of accommodation notes, negotiated at a bank, and also had mutual dealings ; and a third person contracted to settle the account of *B.* with *W:* "if there should be any thing due *W.* from him, as well for any notes *W.* held of his on" —"as also for certain notes which are in the bank, which *W.* is responsible for, by reason of lending or exchanging each others names as security for the other" ;—it was held that *W.* by the terms of this contract, could not claim the *amount* of his liabilities for *B.* ; but only the balance of them, after deducting the amount of *B's* liabilities for him.

THIS was *assumpsit* by the payee of an order drawn by one *John Boynton* on the defendants, composing the house of *Whitney, Sewall & Co.* of which *Abiel Wood* was one, and by them accepted. The order was in the following terms :—" Messrs. *Whitney, Sewall & Co.*   Please pay the order of *David Quimby*, Esq. whatever balance there may be due me on the account current we have this day signed and exchanged, agreeably thereto, when you receive pay from

the Insurance office in *Portland*, for insurance of the ship *Washington*. *Wiscasset, January* 25, 1816. *John Boynton.*" It was accepted on the same day, " to pay agreeably to its tenor."

It was admitted that the insurance money had been received on the 7th of *February* 1816 ; but the controversy arose upon an item of debit against *Boynton*, who was made debtor in the account current referred to in the order ; and upon a memorandum at the foot of the same account, entitled—" Explanation of some of the entries above."

The item was in these words :—" To amount of *Abiel Wood's* account, if there is any balance due him from Capt. *Boynton*, together with the balance that may be due Mr. *Wood* from him on account of any notes which he may hold or be concerned in against Capt. *Boynton ;* amount to be hereafter ascertained." To this item no specific sum was annexed.

The memorandum, so far as relates to this action, was thus:—"The charge for a demand against him by *A. Wood*, is correct ; and it is understood that they are to·account with him for the balance.of Capt. *B's* account with him, if there should be any thing due from him, as well as for any notes Mr. *Wood* held of his on the 9th *Dec.* 1814 ; as also for certain notes which are in the bank ; which Mr. *Wood* is responsible for, by reason of lending or exchanging each others names there as security for the other."

It appeared at the trial, before the Chief Justice, at the sittings after *May* term 1825, that *Wood* and *Boynton* had indorsed for each other at the *Wiscasset* bank ; that *Wood's* liabilities for *Boynton* on the 9th *Dec.* 1814, arose upon two notes indorsed by him, amounting to $774,77 ; and that *Boynton*, at the same time, stood liable as the indorser of *Wood* on a note of $900 ; neither of which notes were yet paid. It further appeared that the amount of the order was demanded of the defendants *March* 13, 1823 ; who replied that they were ready to pay it to the person to whom it belonged, but that Mr. *Wood* had requested that it should not be paid to the plaintiff, or his agent. It seemed also to be conceded in the argument, that the defence was conducted by the directors of the bank ; who claimed the money to the amount of Mr. *Wood's* liability to the bank on

Quimby *v.* Whitney & als.

*Boynton's* account, either as principal or surety, without reference to any balance of liabilities; contending that the memorandum, by a fair construction, did not admit any such adjustment of balance. They also denied the plaintiff's claim to interest on the money from the time it was received by the defendants.

But the Chief Justice directed the jury that as the balance of liabilities to the bank was against Mr. *Wood*, the defendants were holden to pay the amount of their acceptance to the plaintiff; and that Mr. *Wood*, by virtue of the contract, had no right to claim it of them. He also directed them to cast interest from the time the defendants received the money, in 1816. They accordingly returned a verdict for the plaintiff; which was taken, subject to the opinion of the Court upon the meaning of the contract.

*Orr* and *Bailey* argued for the plaintiff.

*Allen* and *R. Williams* for the defendants.

MELLEN C. J. delivered the opinion of the Court.

The decision of this cause must depend upon the construction of the last clause in the memorandum or agreement, at the foot of the account. The whole sentence is in these words, " And it is understood that they (the defendants) are to account with him *(Wood)* for the balance of *B's* account with him, if there should be anything due Mr. *Wood* from him, as well as for any notes Mr. *Wood* held of his on the 9th *Dec.* 1814, *as also for certain notes which are in the bank, which* Mr. Wood *is responsible for, by reason of lending or exchanging each others names there as security for the other.*" No claim is made by the defendant for *Wood's* benefit, for any balance on account, or any notes held by him on the 9th *Dec.* 1814, as abovementioned; but on the last part of the sentence relating to certain notes in the bank. The memorandum states that "the charge for a demand against him by *A. Wood,* is correct." That charge against *Boynton* is in these words: viz. "To amount of *Abiel Wood's* account, if there is any balance due him from Capt. *Boynton,* together with the balance that may be due Mr. *Wood* from him on account of any notes which he may hold or be concerned in against Capt. *Boynton,* amount to be hereafter ascertained." At the head of the memorandum, these words are written: "Explanation of some of the entries

above." So that we now perceive that the clause of the agreement above quoted, is an explanation of the charge also copied from the account. In the charge, the notes are described to be such as *Wood* may hold or be concerned in; in the explanatory agreement or memorandum, they are described as notes which *Wood* "held on the 9th *Dec.* 1814;" and also "certain notes which are in the bank, which Mr. *Wood* is responsible for," &c. In the above quoted item of the account, the charge against *Boynton* is for the balance that may be due *Wood* on account of such notes. This comparison may aid in construing the agreement. It appears that as early as 1813, *Wood* and *Boynton* were in the habit of obtaining money from the Wiscasset bank, by exchanging their names and indorsing for each other; and though the report states the amount due to the bank on the three notes therein mentioned, yet it is evident that the state of the balance was not known at the time the account was made out and the agreement signed. It was to be ascertained afterwards. It was admitted in the argument, though not stated in the report, that at that time *Boynton* was in embarrassed circumstances, though at the time the notes in question were endorsed, he was solvent and in business. This being the case, it has been urged by the defendant's counsel that it would be unjust to give to the agreement the construction which the Judge gave at the trial, because, by so doing, the consequence will be that *Wood* must pay not only his own notes which were endorsed by *Boynton*, but also the notes of *Boynton* indorsed by *Wood*; and that such a consequence is not consistent with the principle adopted by the court at the trial, respecting the balance of liability.

Before attempting to answer this objection and argument, let us see what would have been the situation of *Wood* and *Boynton*, if the agreement of *January* 25th 1816 had never been made. In such case, surely each must have performed his engagement; and the failure of *Boynton* would not have relieved *Wood* from any part of his responsibility as indorser of *Boynton's* paper; and unless the agreement above mentioned has been so formed as to change the principle and effectually protect *Wood* from the consequences of his well known legal liability, then those consequences

must follow, although they may ultimately prove prejudicial to the interests of *Wood.* In a word the agreement must be construed according to the intention of the parties, and that intention must be gathered from the agreement itself, in connection with the account to which it is subjoined as an explanation. What then was this intention? The agreement refers to certain notes then in the bank for which *Wood* was responsible. If it had stopped here, the defendant's construction would then be admissible. It might then be considered that the object of the parties was to afford *Wood* a complete indemnity for the amount for which he stood answerable as surety or indorser for *Boynton,* which has proved to be the sum of $774,77. But if this was the real meaning of the agreement, for what purpose were the other words added, viz. "by reason of lending or exchanging each others' names there as security for the other?" The responsibility of *Wood,* against which the agreement was intended to furnish a guard and indemnity, was a responsibility "by reason of lending or exchanging each others' names as security for the other :" that is, not an accountability to the banks for the whole sum for which he had indorsed, and stood answerable, as the surety of *Boynton,* but for the amount to which he had indorsed for *Boynton* more than *Boynton* had indorsed for him ; that is, as the Judge expressed it, the balance of liability. As we have before observed, this clause in the memorandum is a professed explanation of the charge in the account for *Wood* against *Boynton ;* and that charge speaks only of a balance due *Wood* on account of certain notes he held or was concerned in against *Boynton ;* and we do not discover that there were any notes holden by him, except those which he held in 1814, (about which there is no dispute) or that he was concerned in any other notes than those in the bank ; in some of which he was concerned as maker and *Boynton* as indorser ; in others as indorser and *Boynton* as maker. Against the above mentioned balance *Boynton* was bound, by every principle of honor and justice, to indemnify *Wood,* though *Wood* then had no right of action against him, not having been called on as indorser nor having made payment to the bank : nor does it appear that he has even to this day been called on, or in any way injured by his suretyship for *Boynton.* Still, the agreement

8

Quimby *v.* Whitney & als.

was designed to give, and did give to the defendants a right to retain so much of the fund in their hands as would be sufficient for the purpose.   On a careful examination of the agreement, the account, and the circumstances in which the parties and *Wood* were placed, it appears to have been the intention of all concerned, not to change the original liabilities and rights of *Wood* and *Boynton,* but to secure, out of the fund in the defendants' hands, so much as would completely indemnify *Wood* against eventual loss, consequent upon, or growing out of the original implied contract between him and *Boynton,* at the time of this exchange of indorsements and liabilities, in the same manner as if the amount of the notes indorsed by each for the other had been known, offset against each other, and the balance of implied debt or actual liability had been struck.   After a close examination of this cause and repeated reviews of it, we have not been able to arrive at any conclusion satisfactory to our own minds, except that which we have now stated.   The case finds the balance of liability to be against *Wood.*

If any objection exists as to the instruction of the Judge respecting the calculation of interest, it is done away by a fact, appearing on the argument, viz. that interest was in truth cast only from the time of demand made on the 13th of *March,* 1823.   On the whole we do not perceive any good reason for sustaining the motion for a new trial, and accordingly there must be

*Judgment on the verdict.*

*Weston J.* being interested on the side of the defendants, did not sit in this cause.